# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MARK LARSON,<br><br>          Plaintiff,<br><br>vs.<br><br>SECURIGUARD, INC. HEALTH AND WELFARE BENEFIT PLAN; FCE BENEFIT ADMINISTRATORS INC.,<br><br>          Defendants. | 8:17CV52<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on the Motion to Set Aside Clerk's Entry of Default and Default Judgment, ECF No. 32, filed by Defendant Securiguard, Inc., Health and Welfare Plan ("Plan"). For the reasons stated below, the motion will be granted.

## BACKGROUND

Mark Larson, an employee of Securiguard, Inc., filed this action against the Plan and Defendant FCE Benefit Administrators, Inc. ("FCE"), the Plan's third-party administrator, on February 21, 2017, alleging violations of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et. seq.* Larson alleged that due to a misclassification of his employee status under the Plan, he did not receive the full amount of benefits to which he was entitled. In his complaint, ECF No. 1, he pled claims for denial of benefits under 29 U.S.C. § 1132(a)(1)(B); failure to provide plan documents under 29 U.S.C. § 1132(c); failure to provide continuing coverage notice under 29 U.S.C. § 1132(c)(1); breach of fiduciary duty to act in accordance with plan documents under 29 U.S.C. § 1104(a)(1)(D); and breach of fiduciary duty to monitor under 29 U.S.C. § 1105.

Securiguard's HR Director, Leslie Howard-Watts, became aware of the lawsuit on February 23, 2017. The same day, she sought assistance in addressing the suit from FCE. On February 24, 2017, Larson served FCE, which accepted service on behalf of the Plan. ECF No. 19. Thus, the Plan's answer was due on March 17, 2017. On March 16, 2017, Howard-Watts received an email from Denise Bethel of Trust Management Services ("TMS"), an entity that maintains the same physical address as FCE. The email stated "[w]e were served with this lawsuit, and wanted to check in with you about our plans for helping the plan defend this." ECF No. 33-2, Page ID 699. The next day, Bethel sent another email to Howard-Watts that stated "[p]er our conversation we will proceed with hiring counsel to defend this legal matter against the plan." *Id.* Howard-Watts understood this to mean that TMS would defend the Plan against Larson's suit.

On March 29, 2017, an attorney who identified herself as counsel for the Plan left a voicemail for Larson's counsel, asking to discuss the law suit. Larson's counsel returned the call the next day, but did not reach the attorney and left a voicemail. Larson's counsel never received a return call from the attorney.

On April 5, 2017, Howard-Watts became aware that TMS would not be defending the Plan in the present action. Howard-Watts immediately contacted FCE's Director of Account Management, who referred her to FCE's legal department. Several days later, Howard-Watts spoke with FCE's legal counsel, who informed Howard-Watts that the Plan would have to respond separately to the lawsuit. However, Howard-Watts "did not have enough experience with litigation to know to ask who would be responsible for

obtaining counsel, and assumed that FCE would take care of it." Supp. Brief, ECF No. 33, Page ID 686.

On May 1, 2017, Larson filed a Motion for Clerk's Entry of Default, ECF No. 20, and a Motion for Default Judgment, ECF No. 23, against the Plan. That same day, the Clerk of the Court entered the Plan's default, ECF No. 22, and granted the default judgment, ECF No. 24, in the amount of $161,326.08.

On May 12, 2017, Howard-Watts received notice of the entry of default and default judgment while on vacation. Four days later, Howard-Watts contacted FCE to find out why FCE had not responded to the lawsuit. On May 19, 2017, Howard-Watts spoke with FCE's legal counsel, and learned that the Plan was responsible for finding its own counsel. That same day, Howard-Watts secured counsel to represent the Plan in this action. On May 30, 2017, the Plan filed its motion to set aside the entry of default and default judgment. ECF No. 32.

## STANDARD OF REVIEW

"The court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). "When examining whether good cause exists, the district court should weigh 'whether the conduct of the defaulting party was blameworthy or culpable, whether the defaulting party has a meritorious defense, and whether the other party would be prejudiced if the default were excused.'" *Stephenson v. El-Batrawi*, 524 F.3d 907, 912 (8th Cir. 2008) (quoting *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 784 (8th Cir. 1998)).

The parties appear to agree that relief from the entry of default should be evaluated under Rule 55(c), and relief from the default judgment under the more

3

rigorous Rule 60(b) standard. *See Grant v. City of Blytheville, Arkansas*, 841 F.3d 767, 772 (8th Cir. 2016) ("Although the same factors are typically relevant in determining whether to set aside entries of default and default judgments, '[m]ost decisions . . . hold that relief from a default judgment requires a stronger showing of excuse than relief from a mere default order.'" (alteration in original) (quoting *Johnson*, 140 F.3d 781, 783 (8th Cir. 1998))). However, Rule 55(c) was amended in 2015 through the insertion of the word "final" before "default judgment." *Burger v. Engineered Paint Applications, LLC*, No. 1:17-CV-1063-STA-EGB, 2017 WL 3431439, at *3 (W.D. Tenn. Aug. 9, 2017). As clarified by this amendment, "[t]he demanding standards set by Rule 60(b) apply only in seeking relief from a *final* judgment." Fed. R. Civ. P. 55 advisory committee's note to 2015 amendment (emphasis added). "Until final judgment is entered, Rule 54(b) allows revision of the default judgment at any time." *Id.*

"A default judgment that does not dispose of all of the claims among all parties is not a final judgment." *Id.*; *see* Fed. R. Civ. P. 54(b). "[I]f the default judgment . . . was not final because it did not dispose of all the claims of all the parties, then it is subject to revision under Rule 54(b). The party seeking relief does not need to satisfy Rule 60(b)." 10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2692 (4th ed.) (internal footnote omitted).

Here, the default judgment disposed of the claims against only one of the two defendants. Therefore, because the default judgment is not final, the Court will evaluate the motion under the criteria of Rule 55(c) and not the more rigorous standard of Rule 60(b). *See Burger*, 2017 WL 3431439, at *3 (holding that "the demanding standards" of Rule 60(b) did not apply to a motion to set aside a non-final default judgment). Should

4

the Court determine that good cause exists to remove the entry of default, the Court will exercise its discretion under Rule 54(b) to rescind the default judgment.

## DISCUSSION

First, the Court looks to the reason for the delay and whether the Plan is blameworthy for any portion of it. Based on the factual representations of the Plan, two primary causes were responsible for the Plan's failure to respond to the complaint prior to the entry of default—FCE and TMS's initial representation that one or both of them would defend the Plan and a lack of lack of procedural safeguards by the Plan for responding to litigation.

A reasonable interpretation of TMS's initial emails regarding the lawsuit was that TMS intended to defend the Plan. Specifically, the March 17, 2017, email from Bethel to Howard-Watts stated that TMS would be hiring counsel to defend the Plan. Therefore, from March 17, 2017, to April 5, 2017, Howard-Watts believed the Plan was being defended by TMS.[1]

However, the facts also show that, although Howard-Watts forwarded the lawsuit to FCE on February 23, 2017, she had no further contact with FCE until TMS contacted her the day before the answer was due. Furthermore, after Howard-Watts learned TMS would not be defending the Plan, it was "several days" before she spoke with FCE's legal counsel. Howard-Watts Aff. ¶ 5, ECF No. 33-2, Page ID 698. From this

---

[1] Larson argues that the fact that his counsel was contacted by an attorney identifying herself as the Plan's counsel shows blameworthiness on the part of the Plan. But the factual allegations are that this attorney was retained by TMS, apparently at a time when TMS believed it would be able to defend the Plan. If anything, this shows that TMS not only communicated its intent to defend that plan, but that it actively undertook the defense initially—a fact that speaks to the Plan's lack of culpability for some of its delay.

conversation, Howard-Watts "assumed" that FCE would hire counsel. *Id.* Howard-Watts took no further action until learning of the default on May 12, 2017, and even then, she did not reach out to FCE until May 16 and did not actually speak with FCE's counsel until May 19. These delays and mistakes reveal an apparent lack of procedural safeguards and indicate that the Plan also bore substantial responsibility for the delay. *See Broad. Music, Inc. v. Ten Buck 2, LLC*, No. CIV-10-72-SPS, 2011 WL 1321325, at *1 (E.D. Okla. Mar. 31, 2011) ("The lack of communication between defendant and its insurance company for three weeks after the latter had received a copy of the complaint suggests an absence of minimal internal procedural safeguards." (quoting *Davis v. Safeway Stores, Inc.*, 532 F.2d 489, 490 (5th Cir. 1976))).

Under the totality of the circumstances, this factor shows that, while the Plan shares culpability for the delay, the actions of FCE and TMS mitigate—to a degree—the Plan's blameworthiness. Additionally, the twenty-nine days between the entry of default and the filing of the motion to set aside, while not insubstantial, is considerably shorter than the delay of nearly five months in the case upon which Larson primarily relies. *See Murray v. Solidarity of Labor Org. Int'l Union Benefit Fund*, 172 F. Supp. 2d 1134 (N.D. Iowa 2001). Thus, while the factor of delay weighs against setting aside the default, it does so only minimally.

The next question is whether Larson will suffer any prejudice as a result of withdrawing the Plan's default. "[P]rejudice may not be found from delay alone or from the fact that the defaulting party will be permitted to defend on the merits." *Johnson*, 140 F.3d 781, 785 (8th Cir. 1998) (citing *Swink v. City of Pagedale*, 810 F.2d 791, 792 n.2 (8th Cir. 1987)). "Setting aside a default must prejudice plaintiff in a more concrete

way, such as 'loss of evidence, increased difficulties in discovery, or greater opportunities for fraud and collusion.'" *Id.* (quoting *Berthelsen v. Kane*, 907 F.2d 617, 621 (6th Cir. 1990)). Although, as discussed, the Plan's lack of procedural safeguards exacerbated the delay, Larson does not identify any concrete prejudice he will suffer from the delay. As such, this consideration weighs strongly in favor of setting aside the entry of default.

Finally, the Court must consider whether the Plan has any meritorious defenses to Larson's claims. In examining this factor, "the issue is whether the proffered evidence 'would permit a finding for the defaulting party.'" *Johnson*, 140 F.3d at 785 (quoting *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988)). Regarding Larson's claim for denial of benefits under § 1132(a)(1)(B), Larson argues that FCE misclassified his level of employment, such that he received a lesser amount of benefits. The Plan argues that according to its records of Laron's work hours, Larson was properly classified under the terms of the SPD.[2] Given that the Plan's defense, if established, would relieve the Plan of liability for the first claim, the Court concludes that the Plan has presented a meritorious defense for Larson's first claim.

As to Larson's claims that the Plan failed to supply documents it was required to provide under ERISA, the Plan asserts only a Plan Administrator is subject to these

---

[2] The Plan's supporting brief states that, according to its records, Larson averaged 24.5 hours of work per week. ECF No. 33, Page ID 690. The assertion is not supported by the introduction of evidence, such as relevant documentation or affidavit, although the Plan does cite to specific sections of the SPD in the record. In raising meritorious defenses, "simple assertions unsupported by specific facts or evidence" are insufficient. *See Stephenson*, 524 F.3d 907, 914 (8th Cir. 2008). In this case, considering the Plan presented its factual allegations with specificity and cited to the relevant plan document in the record, the Court finds that the Plan has presented "*minimally* adequate factual support" to proffer its defense. *Id.* (emphasis added).

7

requirements under ERISA and that the Plan is not the Administrator. In an ERISA plan, the plan documents designate the Plan Administrator. 29 U.S.C. § 1002(16)(A). In fact, the SPD contradictorily identifies both Securiguard, Inc., and FCE as the Plan Administrator. *See* ECF No. 1-1, Page ID 22, 38, 106 (naming FCE as Plan Administrator); *id.*, Page ID 12, 115 (naming Securiguard, Inc.). At trial, other plan documents will likely be introduced into evidence and will determine who is the actual administrator, since these documents override conflicting provisions of the SPD.[3] *See US Airways, Inc. v. McCutchen*, ___ U.S. ___, 133 S. Ct. 1537, 1543 n.1 (2013) (citing *CIGNA Corp. v. Amara*, 563 U.S. 421, 437–38 (2011)). Therefore, the Plan has a meritorious defense as to the second and third claims.

Last are the two claims alleging breach of fiduciary duty. The Plan argues that under ERISA's statutory definitions, it cannot act as a fiduciary in regards to its own assets and therefore, it cannot be sued for breach of fiduciary duty as pled in the Complaint. *See Acosta v. Pac. Enters*, 950 F.2d 611, 618 (9th Cir. 1991), *as amended on reh'g* (Jan. 23, 1992) ("A plan covered by ERISA cannot, as an entity, act as a fiduciary with respect to its own assets."). Given case law supporting this proposition, the Court finds that the Plan has raised a meritorious defense as to the fourth and fifth claims.

In summary, the Court has found that the length of delay was moderate and that the Plan bore some, but not all, culpability for it; that Larson would not suffer prejudice from setting aside the default; and that the Plan has raised meritorious defenses to all of

---

[3] Larson cites several cases for the proposition that a SPD can act as a plan document, but Larson presents no case that holds that a SPD controls over other plan documents with which it conflicts.

Larson's claims. Taken together, the factors demonstrate that good cause exists for setting aside the clerk's entry of default and rescinding the default judgment.

## CONCLUSION

For the reasons stated above, the Motion to Set Aside Clerk's Entry of Default and Default Judgment, ECF No. 32, will be granted. Accordingly,

IT IS ORDERED:

1. The Motion to Set Aside Clerk's Entry of Default and Default Judgment, ECF No. 32, is granted;

2. The Clerk's Entry of Default, ECF No. 22, is set aside, and

3. The Default Judgment, ECF No. 24, is rescinded; and

4. Defendant Securiguard, Inc., Health and Welfare Plan will respond to the Complaint, ECF No. 1, no later than fourteen days from the date of this order

5. The Clerk of the Court is directed to resume listing Securiguard, Inc. Health and Welfare Plan in the case caption of the above-captioned action.

Dated this 18th day of August, 2017.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge